## WILLIAM McMASTERS *against* JAMES BELL.

### IN ERROR.

When a person has a right of entry into lands, and does enter, it will always be taken, that he entered under that right, and not as a trespasser.

If a man enters on land as guardian in right of his wife, by which his possession would not be, at first, adverse; it would require some decisive act or declaration to make it so, to entitle him to hold by the statute of limitations.

Whether a possession is adverse or otherwise, is a fact for the jury.

ERROR to the Common Pleas of *Westmoreland* county.

This was an action of ejectment, to recover a tract of land, in which the plaintiff in error was the plaintiff below.

This case covered a good deal of paper, as presented to this Court. There was much testimony, and that somewhat different, though not exactly contradictory. It presented this case.

*Robert Bell* was the owner of the land in question by improvement in the year 1777 or '78, he had a house and 20 or 30 acres of land cleared, and fled from it, when every body else fled, on account of depredations by the Indians. In 1779 or 1780 he died, leaving a widow and children; as to the age of those children there was some uncertainty. In a few years *William McMasters* married the widow, and had by her one child, who died many years ago. About 1787 *McMasters* and the family moved to the land in question, then in a bad state. The old cabin had been repaired by one *Jamison,* who however did not claim it, and had gone away. The sons of *Bell* worked on the land with their step-father; but as they grew up, went down the river, except *John* the defendant. The daughters lived there until they married. About 1800 a new house of two stories, with a stone chimney was built, an orchard was then on the land, and 50 or 60 acres cleared. About that time *John Bell* married and lived 2 or 3 years no the land, in the old cabin; but on what terms or agreement did not appear. He moved off and lived at a tavern he had rented until 1809: at that time *John Bell* returned and lived in the kitchen or small house adjoining to *McMasters'* large house, and worked the fields for two years with *McMasters'* horses and ploughs; and gave him one-third of the crop. *Bell* continued in the house; but

(William McMasters *v.* James Bell.)

*C. Smith,* who had married one of *Bell's* sisters, cultivated the land for the next 2 years as *Bell* had done. In 1813 *Smith* went away, and *John Bell* and *McMasters* each worked part of the land, and quarrelled about it till 1823 or 4.

About that time *Mrs. McMasters,* who was old and frail, went to live with one of her daughters; and about a year after old *Mc-Masters* went to live with a nephew of his. His wife died soon after: and about a year after that *McMasters* brought this suit against *John Bell.*

Some witnesses said they understood *McMasters* went on it in his own right, claiming it as his own, and that they never heard any thing against his claim: but no person proved that he made any express declaration on the subject. He had it taxed in his own name; and the fact that all the children of *Robert Bell* moved away, as they severally grew up, was relied on; and the length of time.

On the other side it was insisted, that the mother, being the natural guardian, *McMasters* entered in her right: that no one, until shortly before this suit, ever heard him claim it as his own: that he permitted *John Bell* to hold part in 1800–1 & 2, and again from 1813 till 1827—and it was also proved by one witness, that *McMasters* told him 10 or 12 years ago that he had bought the shares of some of *Robert Bell's* eldest children. A fact much relied on by the defendants.

Several questions were propounded by the plaintiff's counsel to the Court, upon which they were requested to charge the jury.

*Shippen, president,* left the cause with the jury as a matter of fact, with this general instruction: that if they believed that the plaintiff took possession of the land as his own, and held it adversely to the claim of the heirs of *Bell,* he was entitled to recover: but if he obtained the possession as the husband of *Bell's* widow, who was the natural guardian of his children, and who was also entitled to dower; and held it in that capacity; it was not such an adverse holding, as would give him a title by the statute of limitations.

*Coulter* and *A. W. Foster* for plaintiff in error

Contended, that although the original intention of the plaintiff may have been, to enter and hold possession for the heirs of *Bell,* yet his subsequent acts of ownership, such as building houses, and barns, and clearing land, were such decisive acts of ownership as to amount to a notorious claim in his own right; and this too with the knowledge and in the presence of *John Bell,* under whom the present defendant claims, as heir at law. It would be a fraud to permit the son of *John Bell* to recover this land, his father having given no notice to *McMasters* of his claim, when these improvements

were going on. *McMasters* may have been considered, at first, as a trustee: but the nature of the trust, if any, was such that *ex necessitate rei*, it must have ended in a less time than forty years. *Pipher* v. *Lodge*, 16 *Serg. & Rawle*, 214. *Walker* v. *Walker*, *Ib.* 379.

The fact of *Bell* having leased a part of the land from *McMasters*, and rendered a certain share of the produce, established the relation of landlord and tenant; and was conclusive evidence, that *Bell* did not claim title, and that *McMasters* did.

*J. B. Alexander* for defendant in error.

To entitle the plaintiff to recover, he must shew a right of possession as well as of property. The plaintiff has exhibited no title, no right of property, nothing but a possession, as the husband of a tenant in dower, who was also the guardian of minor children, to whom the only title had descended; this tenant in dower, and guardian in sockage being dead, *McMasters* quit the possession, which he has now no right to recover.

The presumption of law is, that the original possession of the plaintiff, and continuance of it, was *jure uxoris*. *Osburn* v. *Carden*, *Plow.* 293. 1 *Bac. Ab.* 476, 498. *Co. Lit.* 351. 2 *Salk.* 422. 3 *Cruise*, 411. *Adams on ejec.* 50.

The widow of *Bell*, being entitled to dower in the land claimed under his settlement, as the law stood at the time of his death, (*Workman* v. *Gillespie*, 3 *Yeates*, 571,) and she and her husband having entered and kept possession peaceably, will be considered as trustees for the heirs. *Pipher* v. *Lodge*, 16 *Serg. & Rawle*, 214.

If the intention of *McMasters* when he entered on the land was equivocal, it must be considered as according to the existing right. *Kincaird* v. *Scott*, 12 *Johns. Rep.* 368. *Smith* v. *Burtis*, 9 *Johns. Rep.* 180.

If a man enters without any title at all, he cannot be presumed to enter adversely, but the presumption is the other way. *The Soc. for prop. the Gos.* v. *The Town of Pawlet*, 4 *Peters' U. S. Rep.* 480.

In *Jackson* v. *Sears*, 10 *Johns. Rep.* 442, where there was some testimony of an adverse claim to the estate of the mother, and the son accepted a deed from her, which was invalid; that was held to remove the effect of the statute of limitations, by destroying the idea of adverse entry. So in this case, the pretence of *McMasters*, that he had purchased the shares of the minor children of *Bell*, who could not convey, defeats the idea of an adverse entry and holding.

The fact of *Bell* having cropped the land while *McMasters* was in possession, is of no weight; for he was entitled to part of the proceeds in right of his wife; and in addition to this, he furnished the horses and implements with which the grain was raised.

(William McMasters *v.* James Bell.)

The opinion of the Court was delivered by

Huston, J.—The judge below gave an elaborate charge; and taking it into consideration, we are of opinion, there is no error in it. Where a person has a right of entry into lands, and does enter, it will always be taken that he entered under that right, and not as a trespasser. Here the mother, as the natural guardian, and her husband exercising that right, might well enter; and in the absence of all proof as to his intention, will be taken to have so entered. 1 *Plow.* 293. *Co. Lit* 551. 3 *Cruise. Dig.* 41. Besides he was entitled to the dower of his wife.

How *McMasters* entered, and whether during all the time, or what part of it, he claimed the land as his own, and adversely to the heirs of *Bell,* was fully left to the jury:—and as favorably for the plaintiff as he had a right to require.

If he entered as guardian in right of his wife, and his possession was not at first adverse, it would require some decisive act or declaration to make it so: and whether there was any such, was fairly left to the jury.

Neither side showed any office title. If *Robert Bell* had taken a warrant and had a survey, the presumption of abandonment would have been less, and the presumption that the plaintiff had entered in opposition to a legal title, would have been less. And on the other hand, if *McMasters* had taken out a warrant in his own name, it would have been perhaps a more decisive evidence of claim in his own right, than any in this cause. This too the judge told the jury.

The fact that *John Bell* and *C. Smith* cropped the land, was relied on by the plaintiff. The defendant alleged, that having no team or farming utensils of their own, and their mother being entitled to one third as dower, this proved nothing.

All this was fairly submitted to the jury.

Judgment affirmed.